JOURNAL ENTRY AND OPINION
The consolidated appeals and cross-appeals are at least the fifth and sixth time this exhaustively litigated paternity action has been before this court. The appeals arise from orders of the juvenile court calculating past and current child support and professional fees eight years after the action was filed, as well as from a subsequent finding of contempt and award of attorney fees for non-payment of the support finally ordered. We affirm the trial court judgments, except for its failure to impose interest on the underlying child support award. For simplicity, the parties shall be referred to by their proper names.
Gaetano Guy Cicchini is a successful businessman who owns several McDonald's restaurants and related businesses in Stark County, Ohio. Michelle Crew was employed by one of his businesses and became the mother of one of his children, Richard Crew (d.o.b. June 19, 1988). In 1990, the Crews, who were residing in Cuyahoga County, sought assistance from the prosecutor's office to obtain child support. Cicchini thereafter filed this paternity action.
In 1991, two weeks after Cicchini was found to be the child's father, before significant discovery was conducted, and after a hearing which Cicchini did not attend, the juvenile court ordered him in an interim order to pay $1,500 per month in child support. Embroiled in litigation since the inception of this case, the parties have made approximately 400 separate filings on issues ranging from custody to visitation and support. During the course of the proceedings, the juvenile court appointed a guardian ad litem to represent the child's interests. The case did not reach final judgment until 1998, when the child was almost ten years of age.
The remaining financial issues ultimately proceeded to an exhaustive hearing over the course of more than ten days, which required approximately 2000 pages of transcript to record. Over the eight-year period for which income figures were provided since the child's birth, Cicchini reported adjusted gross income of more than $11 million, while Crew earned less than $200,000. In 1995, however, Cicchini reported adjusted gross income of only $567,550, which was substantially below his reported adjusted gross income of more than $1 to $2 million in each of the prior seven years. The parties disputed whether Cicchini's earnings from his businesses were accurate and whether the decline reflected business conditions or manipulation by Cicchini.
Crew sought more than $1 million in back child support and more than $15,000 per month in child support. Cicchini sought to pay $0 in back child support and $1,500 per month in child support. The juvenile court entered a judgment between and toward the lower end of these two sets of extremes: it ordered $287,730 in back child support and $4,697 per month in child support.
The juvenile court's final Judgment Entry of Support with Findings of Facts and Conclusions of Law was thorough and comprehensive. It was comprised of forty-eight typewritten pages of opinion, in addition to eight completed child support worksheets for the years from 1988 through 1995 and a health insurance coverage order. In its Judgment Entry of Support, the juvenile court ordered Cicchini to pay $4,697 per month in child support retroactive to June 1990, when the case began. The court did not order any support for the period from the child's birth in June of 1988 through the filing of the case because it found that the parties cohabited together and Cicchini satisfied his support obligations at that time. The court concluded that Cicchini had paid $1,500 per month in child support from March of 1989 through trial. After calculating the total obligation and subtracting the payments made, the court calculated an arrearage of $287,730.
The juvenile court ordered Cicchini to pay $1,530 per month in back due child support, in addition to his current $4,697 monthly obligation. The court also ordered Cicchini to pay $47,165.85, a fraction of the attorney fees and expenses incurred by Crew, as well as guardian ad litem expenses and fees of $33,991.78. The order specifically advised the parties that failure to comply with its terms could result in contempt sanctions. (Id. at p. 45.)
Each party now complains bitterly and in detail about the support award and fees. Arguing that the awards were excessive, Cicchini appealed the juvenile court's final 1998 Judgment Entry of Support in Appeal No. 74009, raising twelve assignments of error. Arguing that various awards were too modest Crew cross-appealed, raising six assignments of error. The guardian ad litem has also briefed these issues.
Cicchini never made the child support payments ordered by the juvenile court in its 1998 final Judgment Entry of Support. He continued to pay only $1,500 per month, which did not satisfy his $1,530 monthly arrearage or his current $4,697 monthly support obligation. Shortly thereafter, Crew filed a motion to show cause seeking to hold Cicchini in contempt of court and to recover attorney fees. Cicchini, in turn, filed a motion to modify his support obligations. Cicchini's motion to modify support proceeded to judgment first and was denied. In a separate prior appeal, this court affirmed the denial of the motion to modify. Cicchini v. Crew (Aug. 12, 1999), Cuyahoga App. No. 75591, unreported.
The motion to hold Cicchini in contempt ultimately proceeded to a hearing. Cicchini's position was that he was financially unable to satisfy the support obligations set forth in the juvenile court's final 1998 Judgment Entry of Support, so he continued to pay only $1,500 per month. As a result of Cicchini's own records, the juvenile court found that he received W-2 income of $177,000 in 1998, approximately ten times the amount of support he paid. In its Journal Entry with Findings of Fact and Conclusions of Law, the court found him in contempt and sentenced him to ten days in jail which sentence could be suspended upon his timely making specified payments. The court's Journal Entry of Contempt also awarded Crew $5,628.18 in attorney fees and costs.
Cicchini appealed from the juvenile court's twelve-page Journal Entry of Contempt in Appeal No. 76954, raising three assignments of error. Crew cross-appealed. The guardian ad litem has also briefed these issues. This opinion shall address in turn Appeal Nos. 74009 and 76954, which this court consolidated for hearing and disposition.
 Appeal No. 74009
In Appeal No. 74009, the parties seek to relitigate each and every one of the juvenile court's determinations concerning child support. Before proceeding, we note that this is not the proper purpose of an appeal or cross-appeal. The issue is not what this court would have found if the evidence had been presented to us as an initial matter. Instead, we review the trial court's judgment to determine whether it is supported by the evidence and whether the trial court abused its discretion in making its determination. Carefully observing the standard of review is essential particularly when, as in the case at bar, the parents' combined gross income exceeds the $150,000 maximum set forth in the child support guidelines. R.C. 3113.215(B)(2)(b); e.g., Frazier v. Daniels (1997),118 Ohio App.3d 425.
After reviewing the record in accordance with these principles, we affirm the trial court's child support determination in its entirety with one exception. We reverse the trial court's failure to award interest on its past child support award and remand the matter for it to do so. For simplicity, we have separated the arguments involving exclusively past support from those involving child support in general.
Past Child Support
Cicchini's first four assignments of error in Appeal No. 74009 argue the juvenile court's award for past child support is excessive.[1] He argues the award represents de facto spousal support, was higher than the interim award to which no objection was made, did not account for the fact that the parties lived together until December 1993, and did not separately account for housing, food, and clothing contributions he made.
Crew's second, fourth, and fifth assignments on cross-appeal argue to the contrary that the juvenile court's award of past child support was too modest.[2] She argues she did not cohabit with Cicchini before 1990, that no support was ordered for the period before 1990, and that the trial court did not calculate the value of in-kind support provided by Cicchini. We reject both parties' arguments and find that, under the circumstances, the juvenile court's award was within the range permitted by the evidence.
A central dispute between the parties was whether they cohabited. Cicchini and Crew shared a condominium in which they had a joint financial interest although they each also maintained separate addresses. Cicchini was married to another woman at the time and Crew lived with children from a prior marriage. Cicchini argued they cohabited and that he adequately supported the child, born in June of 1988, until fall or Christmas of 1993. Crew argued that, although the parties spent time together, she never cohabited with Cicchini, and, therefore, sought support from the date of the child's birth.
The record indicates that shortly before this paternity action was filed in July of 1990, Crew sought assistance from the prosecutor's office to obtain child support. Cicchini had been paying $750 per month to Crew since March 1989. Beginning in August 1990, after filing the case at bar, Cicchini began paying $1,500 per month, first voluntarily and then under the juvenile court's interim child support order. The trial court ultimately concluded that the parties cohabited until 1990 before the filing of the parentage action and that Cicchini adequately supported the child until that time.
Neither party is satisfied with the trial court's findings that they cohabited until the summer of 1990. Cicchini sought a finding that he adequately supported the child until fall or Christmas of 1993 (three years later), whereas Crew sought a finding that Cicchini never adequately supported the child since his birth in June 1988 (two years earlier). The evidence presented by the parties was irreconcilably conflicting; each party testified to support its respective version of events. Curiously, each party seeks to completely ignore the date when this litigation was commenced to determine, unambiguously, once and for all, the existence and extent of a child support obligation.
Under the circumstances, neither party has shown any error in the trial court's determination, its evaluation and weighing of the conflicting evidence, or its assessment of the credibility of the parties and the evidence. While the evidence may support different conclusions than the trial court made, the evidence did not compel a different result. Its findings concerning cohabitation are supported by sufficient evidence and are not against the manifest weight of the evidence. Cicchini's third assignment of error and Crew's second assignment of error on cross-appeal are overruled.
Cicchini has not shown that any child support ordered from July 10, 1990 constitutes improper spousal support as asserted in his first assignment of error. The juvenile court followed the child support guidelines and, in fact, deviated downward from them when the court calculated the amount of child support. The trial court's child support award was substantially below the approximately $14,000 to $16,000 per month Crew had sought. While the $4,897 per month calculated by the court was more than the $1,500 or $750 per month Cicchini had voluntarily been paying, that does not make the balance spousal support. A trial court is not required to award the minimum amount on which a child could subsist as the amount of child support. Even if Crew could also arguably benefit from some expenditures made for the benefit of the child as Cicchini argues, such indirect or incidental benefit would not transform the payments into spousal support. Under the circumstances, Cicchini has failed to show any error.
Contrary to Cicchini's second assignment of error, a party is not required to object to an interim child support award made at the outset of litigation without discovery or complete financial information in order to have the trial court subsequently calculate the proper amount of child support obligation. In this case, the interim award was made two weeks after the court found Cicchini to be the child's father. The court had no significant financial information and Cicchini did not even appear at the interim support hearing to provide an informed basis for the award. Because this case involves an interim award, it is distinguishable from those cited by Cicchini which involve fully adjudicated support awards or subsequent motions to modify fully litigated support awards.
The interim amount ordered in the case at bar was by its very nature interlocutory and subject to change. Not only was the initial award based on limited or no information concerning the parents' incomes, but such income was almost certain to fluctuate as the litigation progressed in a manner that was not and could not have been foreseen by the court when making an interim award. Interim awards to sustain a child facilitate, rather than preclude, further litigation. Cicchini's argument is upside down. Not only do interim awards not control, but final awards completely supersede prior interim awards. See Muehrcke v. Muehrcke (Oct. 22, 1998), Cuyahoga App. No. 73434, unreported at p. 3. His second assignment of error is overruled.
The juvenile court was likewise not required to find that Cicchini adequately supported the child until fall or Christmas of 1993 or to provide any additional credit to him for contributions made as argued in his third and fourth assignments of error. His arguments again largely ignore the distinction between his relationship with Crew and his relationship with their child.
As noted above, the trial court could properly find that any cohabitation ceased when this paternity action was filed in July 1990. He contends that he was not given sufficient credit for subsequent in-kind contributions. He has not shown, however, that any such contributions were made to the child. For example, he complains about a 1992 wire transfer of $11,000 to Crew that she used to purchase a car. Cicchini has not shown how this transaction, gifts mentioned by Crew in her brief, shared vacation trips, or any other contributions by him constituted child support. Because of this failure of proof, the trial court could properly conclude that Cicchini was given appropriate credit for all in-kind contributions made.
Crew, on the other hand, has likewise failed to show any error in the juvenile court's finding that the parties cohabited together from the child's birth in June 1988 until the filing of this action. Cicchini's evidence supported such a finding and, contrary to Crew's second assignment of error, the court's finding concerning either the existence or duration of their cohabitation is not against the manifest weight of the evidence.
Because the trial court found that Cicchini adequately supported the child during this period, from his birth to the filing of this action, the trial court was not required to make a monetary child support award retroactive to his date of birth. See Shockey v. Blackburn (May 17, 1999), Warren App. No. CA98-07-085, unreported at pp. 3-4. Her fifth assignment of error on cross-appeal complains that the trial court did not determine the value of this in-kind support. She recognizes that this was an impossible task, but nevertheless complains that the trial court did not complete it.
We do not require the trial court to complete impossible tasks and appreciate its patience and the thoroughness of its Judgment Entry of Support in the case at bar. Such findings were not necessary because the trial court found that the parties received all the support to which they were entitled when they cohabited during this period.
Crew's fourth assignment of error argues that the trial court improperly used Cicchini's 1995 I.R.S. Form 1040 adjusted gross income as a basis for calculating his child support obligations for all the prior years. She also complains that the trial court did not award statutory interest on the support awarded. Cicchini's briefs do not respond to the arguments concerning interest.
As noted above, the trial court completed child support worksheet calculations based on the parties' respective income in each year from 1988 through 1995. The court specifically found, however, that the resulting amount calculated by applying the guidelines would be unjust or inappropriate and would not be in the best interest of the child. (Trial Court's Judgment Entry of Support at p. 20.) The court made extensive findings, id. at pp. 10-19, to justify its deviation from the amount rebuttably presumed to be the correct child support obligation as determined by the guidelines.
The trial court's award of $4,697 per month for 1995 was determined by a mechanical application of the child support guidelines. Crew sought as much as $8,000 to $16,000 per month child support for prior years. The trial court found that the child received appropriate support from the time of birth until the summer of 1990 when the parties cohabited. The trial court recognized, inter alia, Cicchini had significant court-ordered alimony and child support obligations from his prior marriage. Among other factors the trial court also considered the parties' respective tax obligations and travel/visitation expenses borne by Cicchini to visit the child. Under the circumstances, Crew has not shown any error in the trial court's calculation of past support.
The record shows that in its Judgment Entry of Support, however, the trial court did not award interest of any kind. Under the circumstances, we believe that Crew was entitled to some interest on the past child support obligations.[3] See Nielsen v. Meeker (1996),112 Ohio App.3d 448; Mattoni v. Mattoni (1997), 118 Ohio App.3d 782. We, therefore, affirm the award but remand the matter to the trial court for the imposition of interest.
Accordingly, Cicchini's first, second, third, and fourth assignments of error on appeal and Crew's second and fifth assignments of error on cross-appeal concerning the award of past child support are overruled. Crew's fourth assignment of error on cross-appeal is well-taken in part; we affirm the trial court's award of past child support, but reverse the trial court's failure to award interest and remand for the imposition of interest on that award.
Child Support Generally
The parties' remaining arguments concerning child support involve support in general rather than past support. In his next six assignments Cicchini, arguing that the amount is excessive, challenges the court's award of $4,697 per month in child support.[4] He argues he is in a precarious financial position; the court failed to consider testimony from his expert economist and accountant, did not consider statistical evidence concerning the average cost to raise a child, and did not give him credit for an irrevocable $50,000 college tuition trust fund he established for the child; the award was against the manifest weight of the evidence; and he was denied equal protection and due process of law.
Crew argues to the contrary that the trial court's $4,697 monthly support award was too modest and that the trial court improperly deviated downward from the child support guidelines.[5] Specifically, she argues the court improperly calculated the amount of Cicchini's 1995 income. After reviewing the record, we find that none of these arguments is well-taken and that neither party showed that the trial court abused its discretion or committed reversible error in any ruling relating to the calculation of support.
Cicchini's finances are complicated and were subject to some discovery disputes. The core of his business is owning and operating McDonald's franchise restaurants. Although he sold his restaurants in Columbus, Ohio, he currently owns sixteen of twenty-three McDonald's restaurants in Stark County, Ohio. He operates them through several affiliated companies. Cicchini Enterprises is a subchapter S corporation which owns the franchises. Avanti Corporation, a C corporation, manages the restaurants. McDonald's of Stark County was a promotional entity, a sole proprietorship, that was discontinued in 1996. He also operates other businesses, including a real estate development company, a real estate rental company, and a travel company.
Joint exhibits submitted by the parties reflected that Cicchini's reported Form 1040 individual gross adjusted income ranged from $1 to $2 million dollars from 1988 through 1994, until 1995, when it was only $567,500. Some information concerning Cicchini's finances appears to have been disclosed at the last minute: for example, at least one joint exhibit was allegedly a draft that either had not been filed or had been superseded by amended returns. The record is further confused because the parties and witnesses frequently used different versions of the various exhibits.
A significant dispute at trial was whether Cicchini's reported income from his businesses was accurate. The parties focused primarily on the year 1995. Cicchini's 1995 Form 1040 individual income tax return had an adjustable gross income of $567,550. Crew argued, however, that through his control over these affiliated corporations he was able to manipulate their earnings to alter his income and child support obligations. She argued Cicchini had gross income within the meaning of the child support guidelines of $2,745,339 in 1995.
Cicchini replied that he did not have complete control and was constrained by certain franchise requirements imposed by McDonald's corporation. Moreover, he argued that certain adjustments should be made to his 1995 adjusted gross income and that profits in the restaurant business had declined significantly. His experts argued alternatively that he had disposable income, which they acknowledged was different from gross income as defined by the guidelines, of $112,226 or $158,548 in 1995.
R.C. 3113.215 governs the calculation of child support obligations. Subsection (A)(1)(a) defines the income of a fully employed parent for purposes of calculating a child support obligation to be that parent's gross income. Subsection (A)(2), in turn, defines gross income generally to include the total of all earned and unearned income from all sources during a calendar year, except as specifically excluded.
Among the specific components of gross income listed in subsection (A)(2) is self-generated income. Self-generated income is based on gross receipts from business minus ordinary and necessary expenses incurred in generating the gross receipts. R.C. 3113.215(A)(3). Subsection (A)(4) defines what constitutes ordinary and necessary expenses. In this case the parties dispute what constituted Cicchini's gross income and ordinary and necessary expenses.
The trial court was not persuaded by Crew's argument that Cicchini's gross income in 1995 was $2,745,339 or by Cicchini's argument that his income was as low as $112,226 or less.[6] The trial court determined that the joint exhibits, including Joint Exhibit 15 for 1995, were accurate and was not persuaded to make adjustments requested by Cicchini or Crew. (Trial Court's Judgment Entry of Support at p. 22.) The trial court ultimately calculated the child support obligations using Cicchini's and Crew's reported adjusted gross income for each year. (See id., Exhibits A through H.)
The court calculated Cicchini's 1995 child support obligation by using his Form 1040 adjusted gross income of $567,550 to yield $4,697 per month including poundage. As noted above, after making extensive findings, the trial court deviated downward from the guidelines in the prior years and imposed the $4,697 per month uniformly throughout the period after the parties ceased cohabiting in June 1990. Under the circumstances, neither Cicchini nor Crew has shown that the juvenile court erred or abused its discretion concerning its child support determination.
Cicchini has not shown that the trial court erred by calculating his monthly support obligation to be $4,697 based on the evidence presented at trial. His fifth assignment complains that the trial court did not consider the child's needs or standard of living when it determined the child's support award and did not justify the increase from its award of $1,500 made in 1991, when no such financial information was available or presented.
Trial courts are required to calculate child support consistent with the R.C. 3113.215 statutory guidelines and the best interest of the child. As noted above, an interim award entered without consideration of finances or compliance with the guidelines — to sustain the child pending litigation does not preclude the trial court from subsequently making a proper award.[7] Contrary to Cicchini's argument, the parties presented evidence concerning the child's needs and standard of living at different times in his life. Moreover, the trial court's Judgment Entry of Support specifically recognized, inter alia, that the child's needs increased from the time the award of $1,500 per month was initially made when he was two years old, id. at p. 10, until he was ten years old in school after he became the focus of his parents' ceaseless hostility and litigation. (Id. at 18-19.) The court also recognized that the child's standard of living was better when they all cohabited and when he was visiting Cicchini than it was when he lived with his mother.
Cicchini's sixth assignment of error contends that the trial court did not take into account the testimony of his expert accountant and economist because it did not make the adjustments to his income that they advocated. The record shows that the witnesses testified at length for approximately 500 pages or one-quarter of the trial. They argued, inter alia, that the trial court should use Cicchini's disposable income as the basis for his child support obligation, although the guidelines use the term gross income.
Cicchini's accountant, Peter Amendola, testified that Cicchini's adjusted gross income of $567,550 in 1995 should be reduced to a disposable income of $112,226 after various additional adjustments. He also argued that Cicchini suffered a loss of $584,246 after depreciation. Amendola conceded under cross-examination by Crew's counsel that adding together the items of Cicchini's gross income, as the term was defined in the guidelines, could reach $2,745,339, but stated that reaching this sum required double counting and did not credit appropriate reductions.
Cicchini's economist, John Burke, also argued the court should make various adjustments to his adjusted gross income of $567,550. He argued that Cicchini's income before taxes was $337,807, and that his disposable income after taxes was $158,548. Both experts recognized that Cicchini was able to reduce his own personal annual income by transferring it from Cicchini Enterprises, his S corporation, to Avanti Corporation, his C corporation. Both likewise recognized that the child support guidelines did not base a support obligation on disposable income.
The trial court explained, The Court finds that expert testimony provided a minimal amount of information concerning the gross income of the Plaintiff [Cicchini] for the purposes of calculating child support. (Trial Court Judgment Entry of Support at p. 21.) The trial court was not persuaded by Crew's argument that Cicchini's gross income in 1995 was $2,745,339 or by Cicchini's expert opinions that it should use his disposable income of $158,548, $112,226, or less in 1995. Instead it found between these extremes and used his adjusted gross income of $567,550 from his Form 1040 individual tax return without the adjustments proposed by Cicchini's experts.
Cases involving child support obligations of persons who own their own businesses are frequently complicated because they have some ability to control and/or report both the business' and their own financial transactions, including income, assets, and disbursements. See e.g., Sizemore v. Sizemore (1991), 77 Ohio App.3d 733 . For purposes of calculating child support obligations, trial courts are not required to accept either personal income tax returns, e.g., Houts v. Houts (1995),99 Ohio App.3d 701, 706, or hired expert opinion testimony as determinative of economic reality. Crew argued that Cicchini's ability to manipulate the finances of his seven businesses and himself left virtually every figure in doubt in the case at bar. Under the circumstances, Cicchini has failed to show that the trial court erred by discounting his experts' testimony or otherwise erred when calculating his support obligation.
Contrary to Cicchini's seventh assignment of error, the trial court was not required to consider evidence concerning average statistical costs of raising a child. The record in the case at bar shows that the trial court excluded evidence concerning this issue because Cicchini did not timely file his economist's report on this matter. Failure to timely file an expert report is a proper basis to exclude such evidence. See e.g., Paugh Farmer, Inc. v. Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44,45-46. Even if the report had been timely filed, however, Cicchini has shown no error or abuse of discretion in excluding the evidence. See Brakora v. Haudenschield (Nov. 22, 1995), Hardin App. No. 6-95-9, unreported.
Cicchini's eighth assignment of error is likewise unpersuasive. Contrary to his argument, the trial court was not required to credit his undocumented claim that he established a college trust fund. See e.g., Schneeberger v. Schneeberger (Dec. 19, 1996), Cuyahoga App. No. 70525, unreported.
Cicchini's ninth assignment of error is that the trial court's child support award is against the manifest weight of the evidence. He argues his gross income should have been reduced by making various adjustments so that his monthly child support obligation would be at most $2,835 rather than $4,697. We have generally addressed this argument under other assignments of error.
This case involved conflicting theories concerning Cicchini's financial circumstances. Cicchini's experts made good points, but could not convincingly explain that Cicchini was unable to manipulate his earnings to reduce his support obligation. While the trial court did not adopt their analysis, however, it did adopt figures much closer to their positions than to those advocated by Crew. Under all the circumstances, Cicchini has not shown that the child support calculated by the trial court was against the manifest weight of the evidence.
Cicchini's tenth assignment of error on appeal argues that the R.C.3113.215 child support guidelines violate equal protection and due process because his child in this case receives more than his minor child from his prior marriage. It is well established that statutory enactments are strongly presumed to be constitutional. E.g., State v. Renalist (1978), 56 Ohio St.2d 276, 278-279. Cicchini has not satisfied his burden of showing that R.C. 3113.215 is unconstitutional on its face or as applied in the case at bar. See also Hubin v. Hubin (June 30, 2000), Franklin App. No. 99AP-1156, unreported (rejecting similar equal protection claim.)
The child support statute directs courts to consider relevant financial information, permits courts to deviate from its general guidelines, and specifically required the court in the case at bar to determine Cicchini's child support obligation on a case-by-case basis. R.C. 3113.215(B)(2)(b). Contrary to Cicchini's argument, however, trial courts are not required to impose upon parents strictly equal child support obligations for each of their offspring.
The record shows that Cicchini's children are of different ages, are not identical, and live in different areas. Moreover, his support obligations were calculated at different times under different financial circumstances. Finally, the mothers of the two children also had different financial circumstances affecting their support contribution when the obligations were calculated. Under the circumstances, Cicchini has failed to show any denial of equal protection or due process of law.
Crew's first assignment of error on cross-appeal contends that the trial court failed to properly calculate Cicchini's income and did not adequately scrutinize his business expenses. She argues his 1995 gross income for purposes of calculating child support was $2,745,339, and the court should not have used his IRS Form 1040 adjusted gross income of $567,550. She also argues for the first time on appeal that the trial court should have found him underemployed in 1995 because his adjusted gross income of $567,550 was only one-half of what it was the prior year.
Under the circumstances, Crew has failed to show any error. The self-generated income component of gross income is calculated by taking the gross receipts received by the parent and subtracting the ordinary and necessary expenses incurred by the parent in generating those receipts. R.C. 3113.215(A)(3). Crews' arguments at trial focused on gross receipts and sought to ignore or downplay the expenses used to generate those receipts. Cicchini's experts argued that those gross receipts improperly overstated Cicchini's income.
As noted above, the trial court did not adopt either party's arguments in their entirety, but ultimately relied on adjusted gross income figures in the personal income tax forms filed as joint exhibits by the parties. Under the circumstances, the trial court's determination of Cicchini's income and expenses from this material was supported by the evidence. The trial court did not err by failing to find Cicchini was underemployed, because Crew offered no proof that he was and because she never raised the argument in the trial court.
Crew's third assignment of error complains that the trial court made downward deviations from the child support guidelines. As noted above, however, the trial court exhaustively considered the factors permitting deviation from the support guidelines in the case at bar. Under the circumstances, neither party has shown any error concerning the guidelines, the permissible factors for deviating from the guidelines, or the application of the guidelines in the case at bar. As a result, Cicchini's fifth through tenth assignments of error on appeal and Crew's first and third assignments of error on cross-appeal are overruled.
Fees and Expenses
Cicchini's eleventh and twelfth assignments on appeal challenge the trial court's award of $44,341.75 in attorney and $33,991.78 in guardian ad litem fees and expenses.[8] Crew's sixth assignment of error on cross-appeal argues that the award of attorney fees and expenses is too modest because she incurred $131,358.92 in fees and related expenses.[9]
R.C. 3113.219(B) authorizes courts to award attorney fees when it issues a support order in proceedings to determine support. Szitasi v. Sobe (Apr. 27, 2000), Cuyahoga App. No. 75632, unreported. The record in the case at bar reveals that counsel for Crew submitted an extensive and detailed itemization of the time spent, particular services performed, and billing throughout the more than seven years of this litigation. (See Defendant's Exhibit 18.)
An examination of Exhibit 18 reveals that it describes services on a wide range of issues. Matters relating to child support generally arose in the beginning and last two years of the case, whereas the intervening period involved custody and visitation disputes. The court noted that Crew incurred approximately $43,594.75 and $6,004 in 1996 and 1997. The record also shows that approximately $1,000 was incurred early in 1991 before the interim child support award.
The trial court's Judgment Entry of Support extensively analyzed the recovery of attorney fees and discussed and applied the factors governing the recovery of reasonable attorney fees in Swanson v. Swanson (1976),48 Ohio App.2d 85. (Id. at pp. 33-41.) The trial court specifically found that the matters raised in this case were not routine, that the hourly fees charged were customary, that counsel was highly experienced, and that counsel's services were necessary.
The trial court ultimately awarded $44,341.75, or approximately 94% of the approximate maximum potential total of $48,341.75, as reasonable attorney fees for services related to support. Although the award totaled only approximately one-third of the attorney fees incurred by Crew in this action, this case involved many issues, and the record shows that not all of the fees were incurred to obtain or enforce a child support obligation. Under the circumstances, neither party has shown that the trial court abused its discretion concerning the attorney fee award. As a result, Cicchini's eleventh assignment of error on appeal and Crew's sixth assignment of error on cross-appeal are overruled.
Cicchini's final, twelfth assignment of error challenges the award of $33,991.78 in guardian ad litem fees and expenses against him. The trial court's Judgment Entry of Support likewise analyzed the guardian ad litem's fees and made similar findings concerning the necessity and reasonableness of them in this case. (Id. at 26-29.) The trial court specifically found that the rights of the child would not be protected if reasonable Guardian ad Litem fees were not awarded. (Id. at 28.)
It is well established that trial courts may award such fees against a father in a paternity action pursuant to R.C. 3113.14. Sutherland v. Sutherland (1989), 61 Ohio App.3d 154, 158. The record in the case at bar reveals that this case languished in a mire of custody and visitation disputes for several years from approximately 1991 through 1995. The trial court found that the guardian ad litem was instrumental in helping the court and parties to ultimately resolve these issues consistent with the child's best interest. The parties stipulated that the guardian ad litem billed a total of $35,485.73 in fees and expenses.
We recognize that the guardian ad litem took an unusually active role in this case through all of his various filings, but this was an unusual case. The trial court specifically commented on the parents' hostility and litigious nature and that independent representation by the guardian ad litem of the child's best interest was necessary. After finding such fees to be reasonable and necessary, the trial court ordered the parties to pay their respective shares of the bill in proportion to their incomes as calculated on the 1995 child support worksheet. This formula resulted in a net award against Cicchini of $33,991.78.
Under the circumstances, Cicchini has failed to show that the trial court's award was unreasonable, arbitrary, or unconscionable. See Robbins v. Ginese (1993), 93 Ohio App.3d 370, 372-373. Accordingly, Cicchini's twelfth assignment of error is overruled.
 Appeal No. 76954
This consolidated appeal and cross-appeal arises from the juvenile court's subsequent Journal Entry of Contempt, finding of contempt and award of attorney fees for non-payment of child support challenged in the prior appeal. Cicchini argues that the trial court abused its discretion by denying his belated motion for continuance of the contempt proceedings, that the court erred in its finding concerning the award of attorney fees, and that its finding of contempt was against the manifest weight of the evidence.
Crew filed a cross-appeal to preserve her arguments concerning the underlying child support award set forth in the prior appeal. With the exception of the trial court's failure to award interest on the award as discussed above in connection with Crew's fourth assignment of error in Appeal No. 74009, we find no merit to the parties arguments in this appeal.
Cicchini's first assignment of error in Appeal No. 76954 challenges the trial court's denial of his belated motion for a continuance.[10] The record shows that the motion for contempt was filed in March 1998, less than two months after the juvenile court's January 1998 final Judgment Entry of Support. The matter ultimately proceeded to a hearing on April 15, 1999 and was continued by agreement of the parties until May 26, 1999. Two days before the continuation date, counsel for Cicchini filed a motion for continuance of the hearing. Counsel supplemented the motion the following day.
Although counsel argues that he was scheduled to appear in other proceedings, he failed to explain why he had not notified the juvenile court of the scheduling conflict earlier. Under the circumstances, Cicchini has failed to show that the trial court abused its discretion by denying his belated motion for continuance. Niam Investigations Inc. v. Gilbert (1989), 64 Ohio App.3d 125.
Cicchini's second assignment of error in Appeal No. 76954 challenges the trial court's award of $5,628.18 to Crew to reimburse her for attorneys fees and expenses incurred in the contempt proceedings.[11]
R.C. 3113.13(F)(1) specifically mandates that a trial court to award reasonable attorney fees when a support obligor is found in contempt for non-payment of court ordered support. Szitasi, supra; Miller v. Barker (1989), 64 Ohio App.3d 649, 651. The trial court in this case awarded a total of $5,628.18, comprised of $5,509 in attorney fees and $119.18 in filing and process server fees, postage and copying costs, incurred in connection with the contempt proceeding.
Cicchini complains that there was no testimony regarding the reasonableness or necessity for the contempt motion or services. However, Crew submitted detailed itemized statements to the court pursuant to stipulations by the parties. The trial court extensively analyzed the recovery of attorney fees and the record shows that it was intimately familiar with these proceedings. Under the circumstances, the trial court properly relied on its own informed judgment concerning the reasonableness and necessity of the services.
Cicchini's final assignment of error in Appeal No. 76954 argues that the trial court's finding of contempt was against the manifest weight of the evidence.[12] The record shows that despite the January 1998 Judgment Entry of Support requiring him to pay his current $4,697 monthly support obligation plus $1,530 monthly toward his arrearage and despite the denial of his request to reduce his support obligation, Cicchini continued to pay only $1,500 per month in support. This amount was not even sufficient to satisfy his monthly arrearage.
The trial court specifically found that Cicchini did not satisfy his burden of proving his financial inability to pay his support obligations. He did not testify. The juvenile court found, from Cicchini's own records, that he received W-2 income in 1998 of $177,000 in wages, approximately ten times the amount of support he paid. Under the circumstances, we do not find that the trial court committed a manifest miscarriage of justice when it determined Cicchini had the financial ability to pay his court-ordered support obligations.
Crew cross-appealed in Appeal No. 76954 from the contempt judgment and reiterates the same arguments she made against the underlying support awards in her cross-appeal in Appeal No. 74009. Because we have already addressed Crew's arguments in Appeal No. 74009, we dispose of them in the same manner for the identical reasons in Appeal No. 76954 without extended discussion. We note, however, that the trial court's Judgment Entry of Contempt specifically recognizes that the court inadvertently omitted an award of interest on the underlying child support award in the Judgment Entry of Support subject to appeal in Appeal No. 74009. (Id. at p. 9.)
Finally, Crew's brief in Appeal No. 76954 also requests damages against Cicchini for filing a frivolous appeal. Her request should have been made by separate motion pursuant to App.R. 23. In any event, although Cicchini's arguments in Appeal No. 76954 were ultimately unpersuasive, we find that they were not frivolous. As a result, Crew's request for damages is hereby denied.
Accordingly, Cicchini's three assignments of error in Appeal No. 76954 are overruled. With the exception of Crew's fourth assignment of error concerning the award of interest of the child support award, her assignments of error are overruled. The judgments of the trial court are affirmed in part, reversed in part and remanded for the imposition of interest.
Judgment accordingly.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________ KARPINSKI, J.
ANNE L. KILBANE, J., CONCURS; TERRENCE O'DONNELL, P.J., DISSENTS (See Dissenting Opinion).
[1] See Cicchini's first through fourth assignments of error in Appeal No. 74009 set forth in the Appendix.
[2] See Crew's second, fourth and fifth assignments of error on cross-appeal in Appeal No. 74009 set forth in the Appendix. Her third assignment of error involves both past and future support, but we discuss it under the future support.
[3] The trial court's subsequent Journal Entry of Contempt recognized that it inadvertently omitted an award of interest in its Judgment Entry of Support. (Trial Court's Journal Entry of Contempt at p. 9.)
[4] See Cicchini's fifth through tenth assignments of error in Appeal No. 74009 in the Appendix.
[5] See Crew's first and third assignments of error on cross-appeal in Appeal No. 74009 in the Appendix.
[6] Cicchini's accountant testified that, after depreciation, Cicchini had a net loss for 1995 of $584,246.
[7] In fact, awards made under R.C. 3113.13(C) as in the case at bar must also comply with the R.C. 3113.215 child support guidelines. R.C.3113.13(E)
[8] See Cicchini's eleventh and twelfth assignments of error in Appeal No. 74009 in the Appendix.
[9] See Crew's sixth assignment of error on cross-appeal in Appeal No. 74009 in the Appendix.
[10] See Cicchini's first assignment of error in Appeal No. 76954 in the Appendix.
[11] See Cicchini's second assignment of error in Appeal No. 76954 in the Appendix.
[12] See Cicchini's third assignment of error in Appeal No. 76954 in the Appendix.
 APPENDIX CASE NO. 74009, APPEAL BY CICCHINI
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING DEFENDANT A WINDFALL RETROACTIVE CHILD SUPPORT AWARD FROM JULY 10, 1990 TO THE DATE OF THE AWARD.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING DEFENDANT A WINDFALL RETROACTIVE CHILD SUPPORT AWARD FROM JULY 10, 1990 TO THE DATE OF THE AWARD WHERE DEFENDANT NEVER FILED WRITTEN OBJECTIONS TO THE INTERIM CHILD SUPPORT ORDER.
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RENDERING ITS AWARD OF CHILD SUPPORT BY FAILING TO RECOGNIZE THAT THE PLAINTIFF AND DEFENDANT FREQUENTLY CO-HABITATED UNTIL DECEMBER OF 1993 AND THAT SIGNIFICANT IN-KIND EXCHANGES OF SUPPORT TOOK PLACE.
ASSIGNMENT OF ERROR NO. 4:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RENDERING ITS AWARD OF CHILD SUPPORT BY FAILING TO ESTABLISH THE VALUE OF AND TO TAKE INTO CONSIDERATION PLAINTIFF'S SIGNIFICANT IN-KIND CONTRIBUTIONS OF HOUSING, FOOD, AND CLOTHING PROVIDED TO DEFENDANT AND MINOR CHILD.
ASSIGNMENT OF ERROR NO. 5:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN INCREASING PLAINTIFF'S MONTHLY CHILD SUPPORT OBLIGATIONS FROM $1,500.00 PER MONTH TO $4,697.00 PER MONTH.
ASSIGNMENT OF ERROR NO. 6:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RENDERING ITS AWARD OF CHILD SUPPORT BY FAILING TO TAKE INTO CONSIDERATION THE TESTIMONY OF ECONOMIST JOHN BURKE AND THE CORPORATE ACCOUNTANT PETER AMENDOLA.
ASSIGNMENT OF ERROR NO. 7:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RENDERING ITS AWARD OF CHILD SUPPORT BY EXCLUDING STATISTICAL EVIDENCE TO DEMONSTRATE THE NEEDS AND COST OF RAISING A CHILD. (TR. 962).
ASSIGNMENT OF ERROR NO. 8:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN RENDERING ITS AWARD OF CHILD SUPPORT BY FAILING TO RECOGNIZE THAT A $50,000 IRREVOCABLE TRUST FUND WAS ESTABLISHED BY PLAINTIFF FOR THE BENEFIT OF THE MINOR CHILD.
ASSIGNMENT OF ERROR NO. 9:
 THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR NO. 10:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING PLAINTIFF DUE PROCESS AND EQUAL PROTECTION OF LAW.
ASSIGNMENT OF ERROR NO. 11:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING ATTORNEY FEES TO THE DEFENDANT FOR ISSUES UNRELATED TO THE CHILD SUPPORT ORDER.
ASSIGNMENT OF ERROR NO. 12:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING EXCESSIVE GUARDIAN AD LITEM FEES.
 CASE NO. 74009, CROSS-APPEAL BY CREW
CROSS-ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW AND FACT WHEN IT FAILED TO CALCULATE FATHER'S INCOME PURSUANT TO STATUTE.
CROSS-ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT'S FINDING THAT THE PARTIES COHABITATED IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
CROSS-ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DEVIATED FROM THE CHILD SUPPORT INDICATED ON THE COURT'S OWN WORKSHEET ATTACHED TO ITS JUDGMENT ENTRY WITHOUT SUFFICIENT FINDINGS OF FACT OR CONCLUSIONS OF LAW, AS TO HOW THE DEVIATION IS IN THE CHILD'S BEST INTERESTS.
CROSS-ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW AND FACT WHEN IT CALCULATED PAST CHILD SUPPORT.
CROSS-ASSIGNMENT OF ERROR NO. 5
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW AND FACT WHEN FINDING THAT APPELLANT PROVIDED IN-KIND PAYMENTS OF SUPPORT AND CREDITED APPELLANT FOR ALLEGED IN-KIND PAYMENTS AGAINST PAST CHILD SUPPORT OWED WITHOUT DETERMINING THEIR VALUE.
CROSS-ASSIGNMENT OF ERROR NO. 6
 THE TRIAL COURT ABUSED ITS DISCRETION IN ITS CALCULATION AND AWARD OF ATTORNEY FEES.
 CASE NO. 76954, APPEAL BY CICCHINI
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN OVERRULING PLAINTIFF-APPELLANT'S REQUEST FOR A CONTINUANCE.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN AWARDING ATTORNEY FEES TO DEFENDANT IN THE AMOUNT OF $5,509.00.
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT'S JUDGMENT OF CONTEMPT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.